Marguerite Svenson, Appellant, *v.* Oscar H. Svenson, Respondent.

*Action to annul a marriage — what disease existing at the time of the marriage is a ground of its annulment — the complaint dismissed where there is evidence of collusion.*

A court of equity has power to annul a marriage at the suit of the wife, where it appears that the husband did not disclose to the wife, until after the marriage ceremony was performed, the fact that he was suffering from a chronic and contagious venereal disease which would, until he had recovered therefrom, incapacitate him from accomplishing the marriage relation.

A judgment dismissing the complaint in such a case should, however, be affirmed where the conclusion is irresistible that the parties mutually desired an annulment of the marriage; that the action was brought in pursuance of the common purpose, and that the ground of relief had not been established with that freedom from suspicion of collusion and from doubt as to its integrity which the law requires.

Goodrich, P. J., dissented from the latter proposition on the ground that the case should be remitted to the Special Term in order to allow the wife to introduce additional evidence on the question of collusion.

Appeal by the plaintiff, Marguerite Svenson, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Kings on the 29th day of March, 1902, upon the decision of the court, rendered after a trial at the Kings County Special Term, dismissing the complaint upon the merits.

*J. Stewart Ross*, for the appellant.

Hirschberg, J.:

This action is brought to procure a judgment annulling the plaintiff's marriage with the defendant. The marriage ceremony was performed on the 29th day of March, 1900, and the action was

commenced in December, 1901. The basis of the action is the alleged .fraudulent concealment by the defendant of the fact that at the time of the marriage he was suffering from chronic and contagious venereal disease. The action was undefended, the defendant appearing by attorney, but not answering. On the trial proof was furnished by the evidence of the defendant's physician that the defendant was suffering from syphilis at the time of the marriage, being under the physician's treatment for the disease from February 12, 1900, until the time of the trial, a period of nearly two years; that at the time of the marriage he was suffering from a lesion of the parts sufficient to incapacitate him from accomplishing the marriage relation, but that at the time of the trial he had practically recovered. The plaintiff testified that the marriage had never been consummated by cohabitation, and that some time after the marriage — how long after she could not tell — the defendant had told her that he had contracted a disease which he did not like to talk about, and the nature of which he did not disclose. There was no evidence of misrepresentation beyond the fact that the plaintiff said her husband told her before the marriage that his general health was good, excepting that he had a cold. The learned trial justice dismissed the complaint, writing a memorandum to the effect that the incapacity was temporary, and that the application for judgment in favor of the plaintiff should, therefore, be denied, upon the authority of *Fisk* v. *Fisk* (6 App. Div. 432).

The case of *Fisk* v. *Fisk* (*supra*) is scarcely in point, and if no other question was presented than that of the power of a court of equity to annul a marriage under the circumstances claimed to exist herein, I am inclined to the view that the judgment should be reversed. The action in the case cited was brought to annul a marriage because the defendant, the wife, had been previously divorced. There was no claim of fraudulent representation, and the court held, following *Clarke* v. *Clarke* (11 Abb. Pr. 228), that the mere fact that one of the parties had been divorced, which fact had not been disclosed to the other party, was not a ground for annulling the marriage for fraud. The general rule, however, was recognized that the law requires that when the contract is entered into, the parties must then be not only competent to make the contract and mentally competent to do the duties which the contract involves,

but also *physically able to meet its obligations.* None of the authorities cited in the opinion in that case declares a rule which is controlling in this case. The general proposition that ill-health, although concealed, or even although the condition has been misrepresented, will not of itself justify annulment — an unquestionably sound proposition — is not sufficient to meet the present case. Here the ill-health directly affects the integrity and the essence of the marriage relation, and is calculated to subject the innocent party to the shame and misery of a loathsome disease on the consummation of the marriage. The question seems to be one of first impression. One or two cases may indeed be found where decrees of annulment have been rendered at Special Term, but not reviewed, in which the fraud consisted of an express false assertion before marriage of freedom from syphilitic disease, but none to which attention has been called relates to the existence of the disease alone as a ground of annulment. The law must be uniform and impartial in its application, and in the absence of binding and explicit authority I would be unwilling to assert a doctrine which would require a court of equity to hold that a man who finds a woman whom he has innocently married afflicted with venereal disease, and who, therefore, refuses to consummate the contract, may not procure a decree annulling the marriage because of the fraud involved in the existence of the condition, and its concealment. Such a condition would seem to be amply sufficient to justify a finding that the afflicted party was physically incapable at the time of meeting the obligations of the relation. The reasoning which refuses relief in the case of ordinary ill-health has no application to a disease which involves disgrace in the contraction, contagion in marital association, probable injury to offspring, and which from its secret and shameful nature denies to the innocent and unsuspecting the protection of fore-knowledge.

Nevertheless I think the judgment should be affirmed. In all cases of this character it is of the first importance that the application for judicial relief should be of absolute good faith and free from the suspicion of collusion. As was said by Lord Penzance in *G.* v. *G.* (L. R. 2 P. & D. 287, 289): "The court is very solicitous in all cases of this kind to see that it is not imposed upon, because attempts are sometimes made to get rid of the bond of marriage for

reasons other than those alleged in these suits. The first question, therefore, always is as to the *bona fides* of the case." It is impossible to read the record in this case without the creation of a very serious doubt as to the *bona fides*. The cause of complaint in its aggravating and unusual character was surely calculated to outrage a sensitive disposition and to call for speedy redress, yet the application has been long delayed and for no apparent reason. The circumstances of the marriage as disclosed by the plaintiff's evidence are such as to cast doubt upon the genuineness of the charge of fraud. The parties were engaged to be publicly married on April 4, 1900, and invitations had been issued for a wedding reception to be held on that day. The plaintiff testified, however, that they were privately married on the twenty-ninth day of March preceding, but that the public reception was held on April fourth, six days after the marriage, in accordance with the invitations. Under the circumstances, her inability to give any idea as to when it was that she first learned of her husband's alleged physical condition is significant. Assuming the truth of the charge that he was then suffering from chronic venereal disease so as to be wholly incapacitated from accomplishing the marriage relation, it is difficult to understand why the announced wedding day was anticipated or at whose suggestion. Credulity is surely taxed when a marriage in haste followed by the leisurely receipt of public congratulations must be ascribed to the importunity either of an impotent husband or a defrauded wife. The conduct of the trial strengthens the doubt herein suggested. Although the defendant made no answer, he appeared at the trial in person and by attorney with the evident purpose of doing what he could to fasten upon himself the odious accusation. When his physician was called to testify to the existence of the disease his counsel expressly waived all objection to the admission of the evidence, stating to the court that " I do this because my client has *examined carefully into the facts of this case,* and is convinced he has no defense to this action, and he does not wish to interpose any defense." Aside from the careful examination necessary to enable a husband to discover whether he has been so diseased for a continuous period of two years as to be incapable of sexual intercourse, it is quite evident that there is a wide difference between refraining from the making of a defense and furnishing active aid and assistance to the

prosecution. In effect the defendant established the case against himself. Indeed, when the physician himself hesitated to testify, the defendant's counsel hastened to assure him that the defendant had no objection. The conclusion is irresistible that the parties mutually desired an annulment of the marriage, that the action was brought in pursuance of the common purpose, and that the ground assigned has not been established with that freedom from suspicion of collusion and from doubt as to its integrity which the law wisely requires in this class of cases.

The judgment should, therefore, be affirmed.

BARTLETT and WOODWARD, JJ., concurred; GOODRICH P. J., read for reversal.

GOODRICH, P. J. (dissenting):

I agree with the reasoning in the first branch of the opinion of Mr. Justice HIRSCHBERG, and, therefore, am in favor of reversing the judgment, but I do not concur in the affirmance of the judgment on the ground stated by him. If the evidence is open to his criticism we might remit the case to the Special Term, for the purpose of permitting the plaintiff to introduce additional evidence on the question whether the action was prosecuted collusively, but as the evidence now stands, I think the judgment should be reversed and a new trial granted.

Judgment affirmed, without costs.